

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

o-6295

Honorable Arthur B. Knickerbocker
Brigadier General
The Adjutant General's Department
Austin, Texas

Dear Sir:

Opinion No. O-6295
Re: Does the Adjutant General of Texas have the legal right to provide quarters and utilities for officers actively serving on his staff in the Military Forces of this State, who, at the same time, hold civil offices of emolument, trust and honor?

We acknowledge receipt of your letter of November 27, 1944, which reads as follows:

"Section 40, of Article 16, of the Constitution, provides in substance, that no person shall hold or exercise more than one civil office of emolument except an officer of the National Guard and other officers named therein, and further providing that nothing in the Constitution shall be construed to prohibit an officer of the National Guard, or other named officers, from holding in conjunction with such military office, any other office of honor, trust, or profit in the State or Nation.

"Section 33 of the same article provides that the rule prohibiting the holding of two civil offices of emolument at the same time, shall not apply to officers of the National Guard, enlisted men, and other named persons.

"Article 5838, as amended by an Act of the 48th Legislature, Section 4, Chapter 311, Page 467, provides that when such officers are called into active service in time of war, or under other conditions named therein, that they shall, during their time of service, be entitled to and shall receive the same pay and allowances,

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

except money allowances for clothing, as are now, or may be hereafter established, by the laws for the Army of the United States.

"The United States Army Pay Table, under the Pay Re-adjustment Act of 1942, approved June 16, 1942, provides for base pay annually, depending on the rank of the officer, plus housing and subsistence, figured on a 30-day basis.

"The Constitution and laws above referred to have been interpreted among other cases, in Carpenter vs. Sheppard, 145 SW (2) 562; and Kramer vs. Sheppard, 167 S. W. (2) 147. In the last named case, the Supreme Court said, in part - "The people no doubt considered, when they adopted these amendments, that the public's welfare would be better served by allowing these classes to serve the State and Nation in the military units named, while at the same time, rendering service to the State as civil officers;' and in the Carpenter case, said - 'This presumption should be indulged in willingly, and not grudgingly.'

"Some years ago, long before my tenure of office as Adjutant General, there was constructed at Camp Mabry, largely out of existing old buildings a number of apartments, in which were quartered various members of the staff of the Adjutant General, and other military personnel. This was done, no doubt, to obviate the necessity for paying a monthly allowance for housing, and utilities provided for by law, and for the convenience of the staff in the various conferences necessary in properly carrying out military duties.

"As a measure of economy, and for convenience in staff conferences, I have obtained the service of men who hold civil offices of emolument, and have stationed them in the aforesaid apartments owned by the State, and am providing the utilities necessary to the maintenance of such apartments. All the chiefs of sections, together with the Assistant Adjutant General, and myself, now live at Camp Mabry in these State owned buildings. Although it appears that such

officers as I now have on the staff, with civil commissions of emolument, apparently have the legal right to draw salaries for their service as military officers; no such salary is being drawn, but has been duly waived. I desire, by virtue of the aforesaid law, and precedent, and purposes for which such buildings were constructed, to provide the use of such houses and utilities necessary to their maintenance to those men, without cost to them. An appropriation for maintenance and utilities for these buildings has been made and is available.

"(1) Will you kindly tell me whether or not I have the legal right to provide such quarters and utilities necessary for their maintenance, without charge to those men, now actively serving on my staff in the military forces of this State, who, at the same time, hold civil offices of emolument, trust and honor?"

The 1st paragraph of Article 5790, Revised Statutes, as amended, provides:

"The Adjutant General shall be in control of the military department of this State, and subordinate only to the Governor in matters pertaining to said Department, or the military forces of this State; and he shall perform such duties as the Governor may from time to time entrust to him, relative to the military commissions, the military forces, the military stores and supplies, or to other matters respecting military affairs of this State; and he shall conduct the business of the Department in such manner as the Governor shall direct. He shall have the custody and charge of all books, records, papers, furniture, fixtures and other property relating to his Department, and shall perform as near as practicable, such duties as pertain to the Chief of Staff, the Military Secretary and other Chiefs of Staff Departments, under the regulations and customs of the United States Army."

Article 5838, Revised Statutes, provides:

"The Military Forces of this State, including the Texas State Guard, when called into active service of this State in time of war -- shall, during their time of service, be entitled to and shall receive the same pay and allowances, (except money allowances for cloth-

Honorable Arthur B. Knickerbocker - page 4

ing) as are now or may hereafter be established by
the laws for the Army of the United States."

Title 37, Section 106, of the U. S. Code Annotated,
provides in part as follows:

"Except as otherwise provided in this section,
each commissioned officer below the grade of brigadier
general or its equivalent -- while either on active
duty or entitled to active-duty pay shall be entitled
at all times to a money allowance for rental of quar-
ters."

The exceptions listed in said section as not being
entitled to the money allowance include officers without depend-
ents while on field duty or at sea, and any officer who is
"assigned quarters at his permanent station --."

Said section authorizes the President to make regu-
lations "in execution of the provisions of this section", and,
pursuant thereto, executive order No. 9255 was issued by the
President, effective as of June 1, 1942. In said order, the
term "permanent station" was defined as including "the place
on shore where an officer is assigned to duty --." Said order
further provided: "The assignment of quarters to an officer
shall consist of the designation in accordance with regula-
tions of the department concerned of quarters controlled by
the Government for occupancy without charge by the officer
and his dependents, if any."

Army regulations, No. 35-4820, issued by the War De-
partment on November 17, 1944, provides in Section 9 thereof:

"The laws governing the payment of rental allow-
ances contemplate that officers with dependents will at
all times be furnished adequate quarters for such de-
pendents, or shall be entitled to rental allowance.
When suitable public quarters are not available, or
when for military reasons dependents are prevented
from occupying available public quarters, the officer
is entitled to rental allowance."

And Section 10 thereof provides in part as follows:

"Commanding Officers having jurisdiction of as-
signment of quarters to officers will assign to of-
ficers without dependents such quarters or living

437

Honorable Arthur B. Knickerbocker - page 5

accomodations as may be considered suitable to the
conditions of service at their stations. Under war-
time conditions it is considered in the best interests
of the service that such officers may not be permit-
ted to occupy quarters at places remote from their
posts of duty."

Further, Army Regulations No. 100-90, issued by the
War Department on April 19, 1943, provides in substance that
when public quarters under the jurisdiction of the War Depart-
ment are furnished to military personnel, utilities will be
supplied to such quarters at the expense of the Government.

Item 71 of the current appropriation for the Adjutant
General's Department, appearing on p. 887, Acts of the 48th
Legislature, is as follows:

"Ice, fuel, rent on maneuvers and miscellaneous
expenses of operating camps, and including utilities,
auto expense, repairs and replacements, and extra
help, Camps Mabry, Hulen and Wolters and other camps
-- $12,000.00."

Thus, Article 5838, Revised Statutes, and the appro-
priation bill, supra, in the light of army laws and regulations,
clearly authorize the assignment of military quarters owned
by the State and furnishing of utilities to the officers men-
tioned in your letter, unless there be constitutional bars to
such action.

Sections 12, 33 and 40 of Article 16 of the Texas Con-
stitution impose restrictions against the holding by any person
of more than one office of emolument at the same time. The lat-
ter two sections were amended in 1932 so as to except from
their restrictions officers in the National Guard of Texas, and
others listed.

In the case of Carpenter v. Sheppard, 145 S. W. (2d)
552, cited in your letter, the Texas Supreme Court held that
the amendments to the Constitution above referred to authorized
Mr. Carpenter to collect his salary as a state official while
serving as an officer of the National Guard. The court further
held that he was still an officer in the National Guard of
Texas within the meaning of the exception in said Constitution-
al provisions even after he was called into National military

service, and that "his appointment -- in the United States Army does not violate Section 12 of Article 16 of the Constitution."

In Opinion No. O-4409, construing said Constitutional amendments, we said:

"We are of the opinion that the phrase 'National Guard of Texas' was used in the provisos to indicate the organized militia of the State, rather than that organization of the militia, as then constituted, known as the 'National Guard of Texas'. To hold otherwise would be to observe the form and ignore the substance. Since both the 'National Guard of Texas' and the 'Texas Defense Guard' are components of the organized militia of this State, it follows that your membership in the Texas Defense Guard will not prejudice your position with the State Board of Health."

From the foregoing, we conclude that you are legally authorized to use the buildings in question at the State Military Post of Camp Mabry as quarters for said officers and their dependents, and to furnish utilities for said quarters out of the legislative appropriation aforesaid. We further conclude that the granting of such allowances to men already on the State payroll in other capacities is not forbidden by the Texas Constitution. Your question is answered in the affirmative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
    Carlos C. Ashley
First Assistant Attorney General

By
    J. Arthur Sandlin
Assistant Attorney General

APPROVED DEC

ATTORNEY GENERAL OF TEXAS

JAS:iw

APPROVED
OPINION
COMMITTEE
BY